OPINION OF THE COURT
Alexander Graves, J.
Petitioner correctly brings to the court’s attention that, in its decision dated February 7, 1989, the court did not consider one of petitioner’s arguments in support of canceling respondent’s warehouseman’s lien. Petitioner was a tenant who has *351 been evicted by her landlord and whose furnishings had been delivered, apparently by the City Marshal acting for the landlord, to respondent’s warehouse. Petitioner’s argument is that the landlord and/or City Marshal could not create a lien on petitioner’s furnishings in favor of respondent by delivering same to respondent for storage. The court finds this reasoning persuasive, especially in view of subdivision (3) of UCC 7-209 providing that a warehouseman’s lien against the owner of goods in unauthorized bailment cases is effective only where the depositor would have the power to pledge the goods. It does not follow, however, as is more fully set forth below, that the furnishings may not be sold.
Petitioner has, in timely fashion, commenced a proceeding under UCC 7-211 to determine the validity of the lien. This section, along with its sister section, Lien Law § 201-a, presents a number of unusual problems. First, it does not provide who should be made parties respondent. Although not done here, it is probably better practice to join as respondents both the landlord, as the person on whose account the goods are held, and the warehouseman. Second, the section contemplates a determination only of the validity of the lien. In cases like this one, no lien exists, but there may nevertheless be a sale. In addition, the court should certainly be empowered to review the prerequisite notice or notices and to take proof of the manner in which service was made. Third, the section seems to cast upon respondent the burden of establishing his position; the sale may proceed, it seems, only if "the warehouseman shall establish the validity of the lien”. (UCC 7-211.)
The court will make the best of bad legislation by considering the proceeding as an application to stay the sale of petitioner’s furnishings because the required prerequisites have not been complied with.
As stated above, a sale of the bailed property may take place even in the absence of a lien. Were this not so, a warehouseman receiving from a landlord certain household furnishings of a tenant who had been evicted would be able neither to sell nor otherwise rid himself of the furnishings. UCC 7-206, "Termination of Storage at Warehouseman’s Option”, provides that warehouseman may, on notifying interested parties, require payment of his charges and removal of the stored goods by the end of the agreed storage period or, if *352 no period was agreed, by the end of a period of 30 days after receipt of notification. If not removed, the section continues, the goods may be sold in accordance with section 7-210. In eviction cases, it would appear that the period would usually be 30 days and that the tenant, at any time during the period could go to the warehouse and claim his possessions without having to pay any charges. If the tenant did so, the accumulation of warehouse charges would stop and the warehouseman might claim from the landlord all that was owed. If the tenant did not claim his furnishings, the warehouseman could, after the expiration of the 30-day period, serve the notification described in paragraphs (a), (b) and (c) of section 7-210 (2). The notification is to be served by personal delivery or by registered or certified mail. It would appear to be good practice to serve the landlord as well as the tenant. Among other things, the notification must contain a demand for payment within a specified time not less than 10 days after receipt and a statement that if the claim is not paid within that time, the goods will be advertised and sold at auction. At any time before the sale, the tenant may claim the goods and take possession of same without payment. If he fails to do so, the goods may be sold as provided in section 7-210 (2), but the proceeds must be held by the warehouseman for the benefit of the tenant. The warehouseman may look only to the landlord for the payment of the warehouse charges.
The court concludes that the sale must be stayed. It appears that no section 7-206 notice was ever given, and compliance with many of the requirements with respect to the section 7-210 (2) notification has not been established. Petitioner may claim her furnishings at any time and may take possession of same without being obligated to make any payment to respondent. In order to exercise this right petitioner must remove said furnishings from respondent’s warehouse. If petitioner does not so remove her furnishings, they may be sold in accordance with the procedure described above. If sold, the proceeds must be held by respondent for the benefit of petitioner. Respondent may look only to the landlord for payment of storage charges.
This determination represents a compromise between the requirements of the statute and the realities of the situation in which each of the parties finds himself. A warehouseman cannot be prohibited from selling property of which he cannot *353 otherwise rid himself. A better solution would flow from legislation governing the rights of the parties where a landlord stored a tenant’s property with a warehouseman in the course of an eviction proceeding. Until such legislation comes to pass, the solution outlined here, although awkward, seems workable