Ronald MOORE, Rita Green,
Appellants (Plaintiffs),

v.

REPUBLIC MOVING AND STORAGE,
INC., Appellee (Defendant).

No. 49A02–8705–CV–197.

Court of Appeals of Indiana,
Second District.

Jan. 25, 1990.

Rehearing Denied March 27, 1990.

Christopher B. Haile, Kenneth J. Falk, Legal Services Organization of Indiana, Inc., Indianapolis, for appellants.

Merle B. Rose, Cronin & Rose, Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Plaintiffs-appellants Ronald Moore (Moore) and Rita Green (Green) appeal from the trial court's dismissal of their complaint against Republic Moving and Storage, Inc. (Republic) which alleged that Republic did not possess a valid lien and therefore wrongfully sold Moore and Green's household furnishings to satisfy storage charges.

We reverse and remand.

## FACTS

The facts most favorable to Moore and Green reveal that in 1985, they occupied an apartment leased by Braeburn Village in

Indianapolis. The small claims court constable served Moore and Green with an eviction summons on September 19, 1985, after their rental payments fell into arrears. In October, 1985, Braeburn Apartments obtained a writ of restitution and order of eviction in the Marion County Small Claims Court. At that time, a default judgment was entered for Braeburn Apartments in the amount of $457 plus court costs.

Once Braeburn Apartments obtained its judgment, the constable removed Moore and Green's property from the apartment on December 10, 1985, and placed it in storage at Republic's warehouse. The writ of restitution advised Moore and Green that their property would be removed, placed in storage, and levied upon for the judgment, costs, and interest accrued since October 1, 1985. On March 27, 1986, Republic published a notice in the "Indianapolis Commercial" newspaper claiming that Moore and Green were liable in the amount of $580 to satisfy a warehouse lien. The notice provided that an auction would take place in Indianapolis sometime after April 10, 1986, no date being specified. A list of the stored property was also received by Green on April 3, 1986.

In July, 1986, Moore and Green filed a complaint against Republic seeking the return of their property or damages if that property was sold. Republic filed a motion to dismiss on September 16, 1986, which was granted in February, 1987. Although Republic never sought or obtained a judgment, Republic sold Moore and Green's property at a public auction which had an estimated value of $2,000, in November, 1986, to satisfy their handling, storage, and newspaper advertising charges that totaled $980. The record before us does not reflect the amount of the proceeds realized from the auction.

### ISSUE

Moore and Green present the following issue for our review:

> Did Republic possess a valid lien entitling it to sell Moore and Green's household furnishings when that property was

delivered to Republic pursuant to a court order after Moore and Green were evicted from their apartment?

*PARTIES' CONTENTIONS*—Moore and Green maintain that a small claims court constable is not a bailor, and because they did not authorize or consent to the storage of their property, Republic did not possess a valid warehouseman's lien and the storage and subsequent sale of their property was improper.

Republic responds that a warehouseman's lien is inapplicable under these circumstances and a lien arose by operation of law permitting Republic to store and subsequently sell Moore and Green's property to satisfy the accrued storage fees.

*CONCLUSION*—The trial court improperly dismissed Moore and Green's complaint.

Our standard of review of a dismissal under Ind. Rules of Procedure, Trial Rule 12(B)(6) is well known. The facts alleged in the complaint must be taken as true, and dismissal is appropriate only when it appears that under no set of facts could the plaintiff be granted relief. *Thiele v. Indiana Dep't. of Highways* (1985), Ind. App., 472 N.E.2d 1274; *Employers Ins. of Wausau v. Commissioner of Dep't. of Ins.* (1983), Ind.App., 452 N.E.2d 441; *Foster v. New* (1980), Ind.App., 407 N.E.2d 271. When it appears a *certainty* from the face of the complaint that Moore and Green were not entitled to *any relief,* we will not reverse the trial court's grant of Republic's motion to dismiss. *See Avery v. Faulkner* (1984), Ind.App., 471 N.E.2d 1226, *trans. denied; Paul v. Metropolitan School Dist.* (1983), Ind.App., 455 N.E.2d 411.

■■■ Ind.Code 26-1-7-209 (1988) provides in pertinent part:

> "*A warehouseman has a lien against the bailor on the goods covered by a warehouse receipt* or on the proceeds thereof in his possession for charges for storage or transportation (including demurrage and terminal charges), insurance, labor, or charges present or future in relation to the goods, and for expenses necessary for preservation of the goods

or reasonably incurred in their sale pursuant to law."

(Emphasis supplied.) IC 26–1–7–209(3) makes this lien effective "against any person who so entrusted the bailor with possession of the goods that a pledge of them by him to a good faith purchaser for value would have been valid...." This specific language makes it clear that a lien is created against the owner of the property *only* if the owner of the property acts as a bailor or authorizes another to act as a bailor.

Although we know of no relevant decided cases in Indiana, several jurisdictions have determined that a warehouseman does not have a valid lien on another's property when that property is turned over to the warehouseman by a constable who had removed it pursuant to an order of restitution. In *Cordle v. Lincoln Moving & Storage, Inc.* 19 U.C.C.Rep.Serv. (Callaghan) 1204 (Neb.Dist.Ct.1976), the lower court entered an order of restitution after the plaintiffs' rental payments fell into arrears and the plaintiffs were evicted. The Municipal Court constable served the plaintiffs by leaving a copy of the writ on their apartment door. The writ ordered that the plaintiffs vacate the apartment. Two days later the constable returned to the premises, entered the apartment and contacted Lincoln Moving & Storage who moved the plaintiffs' property to their warehouse. In rejecting Lincoln Moving & Storage's contention that a valid lien was created under U.C.C. 7–209 the court reasoned:

"*[The constable] who deposited the property with [Lincoln Moving & Storage] although acting lawfully in good faith and pursuant to a court order, did not have the authority and could not create a valid lien against the property.* This is true even if he was acting as an involuntary bailee as [Lincoln Moving & Storage] contends. *Republic of Austria v. H.G. Ollendorff, Inc.*, NY Sup Ct, Spec Term, NY Law J, p 2, 7 UCC Rep Serv 535; *Nickolas v. Patrick,* 51 MichApp 561, 215 NW2d 715, 14 UCC Rep Serv 761; *General Motors Acceptance Corp. v. Sutherland* 122 Neb. 720 [241 N.W. 281]. Statutorily created liens are to be strictly construed and should not be extended to cases not expressly within the statute. *County Board of Supervisors of Platte Co. v. Breese,* 171 Neb 37, 105 NW2d 478."

*Id.* at 1205 (emphasis supplied). The *Cordle* court also observed that Lincoln Moving & Storage might have prevailed had Nebraska adopted the 1966 editorial board amendment to U.C.C. 7–209(3) which could have created the existence of a warehouseman's lien under these circumstances if the *depositor* (constable) had been the *legal possessor* of the goods. Indiana also has *not* adopted the amendment which provides:

"A warehouseman's lien on household goods for charges and expenses in relation to the goods under subsection (1) is also effective against all persons if the depositor was the legal possessor of the goods at the time of deposit. 'Household goods' means furniture, furnishings and personal effects used by the depositor in a dwelling."

*Id.* at 1204.[1] Moore and Green did not contract with Republic to store their property. As in *Cordle*, the small claims court constable removed Moore and Green's belongings once Braeburn Apartments obtained its judgment. The constable then deposited that property with Republic. Although the writ of restitution empowered the constable to take possession of the property, no warehouseman's lien was created in favor of Republic, inasmuch as Moore and Green never consented to the storage of their property, and they did not authorize the constable to deposit it with Republic. *See Cordle, supra; see also Disch v. Raven Transfer & Storage Co.*

1. Kansas is one of eighteen jurisdictions which has codified this amendment. However, in *Owen v. Treadwell* (1986), 11 Kan.App.2d 127, 715 P.2d 1040, the Kansas Court of Appeals in a factually similar situation observed that "there may exist an issue whether the [storage company] acquired a valid warehouseman's lien; specifically, whether the sheriff was the 'legal possessor' of Owen's goods at the time he deposited them with [the storage company]." *Id.* 715 P.2d at 1043–44.

(1977), 17 Wash.App. 73, 561 P.2d 1097 (storage company was not entitled to a warehouseman's lien when it was shown that the bailor merely had legal possession of the owner's goods).

In a factually similar case, the Civil Court of New York City recently determined that a landlord could not create a lien on a tenant's furnishings in favor of a warehouseman by delivering those goods to the warehouseman for storage. In determining that the sale of the evicted tenant's goods had to be stayed, the court in *Young v. Warehouse No. 2, Inc.,* (1989), 143 Misc.2d 350, 540 N.Y.S.2d 654, observed:

2. IC 26–1–7–206 (1988), which is identical with the New York provision, provides in pertinent part that:
   "(1) A warehouseman may on notifying the person on whose account the goods are held and any other person known to claim an interest in the goods require payment of any charges and removal of the goods from the warehouse at the termination of the period of storage fixed by the document, or, if no period is fixed, within a stated period not less than thirty (30) days after the notification. If the goods are not removed before the date specified in the notification, the warehouseman may sell them in accordance with the provisions of the section on enforcement of a warehouseman's lien (IC 26–1–7–210).

   *     *     *     *     *

   (4) The warehouseman must deliver the goods to any person entitled to them under IC 26–1–7 upon due demand made at any time prior to sale or other disposition under this section.
   (5) The warehouseman may satisfy his lien from the proceeds of any sale or disposition under this section but must hold the balance for delivery on the demand of any person to whom he would have been bound to deliver the goods."

3. "(1) Except as provided in subsection (2), a warehouseman's lien may be enforced by public or private sale of the goods ... after notifying all persons known to claim an interest in the goods. *Such notification must include a statement of the amount due, the nature of the proposed sale, and the time and place of any public sale....*
   (2) A warehouseman's lien on goods other than goods stored by a merchant in the course of his business may be enforced only as follows:
   (a) All persons known to claim an interest in the goods must be notified.
   (b) *The notification must be delivered in person or sent by registered letter to the last known address of any person to be notified.*

"UCC Sec. 7–206, 'Termination of Storage at Warehouseman's Option,'[2] provides that a warehouseman may, *on notifying* interested parties, require payment of his charges and removal of the stored goods by the end of the agreed storage period or, if no period was agreed, by the end of a period of thirty days after receipt of notification. If not removed, the section continues, the goods may be sold in accordance with Sec. 7–210.[3] In eviction cases, it would appear that the period would usually be thirty days and that the tenant, at any time during the period could go to the warehouse and claim his possessions

(c) *The notification must include an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than ten (10) days after receipt of the notification, and a conspicuous statement that unless the claim is paid within that time the goods will be advertised for sale and sold by auction at a specified time and place.*
(d) The sale must conform to the terms of the notification.
(e) The sale must be held at the nearest suitable place to that where the goods are held or stored.
(f) After the expiration of the time given in the notification, an advertisement of the sale must be published once a week for two (2) weeks consecutively in a newspaper of general circulation where the sale is to be held. *The advertisement must include a description of the goods, the name of the person on whose account they are being held, and the time and place of the sale.* The sale must take place at least fifteen (15) days after the first publication. If there is no newspaper of general circulation where the sale is to be held, the advertisement must be posted at least ten (10) days before the sale in not less than six (6) conspicuous places in the neighborhood of the proposed sale.
(3) Before any sale pursuant to this section, any person claiming a right in the goods may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section. In that event the goods must not be sold, but must be retained by the warehouseman subject to the terms of the receipt and IC 26–1–7.

*     *     *     *     *

(6) The warehouseman may satisfy his lien from the proceeds of any sale pursuant to this section, but must hold the balance, if any, for delivery on demand to any person to whom he would have been bound to deliver the goods."

without having to pay any charges. If the tenant did so, the accumulation of warehouse charges would stop and the warehouseman might claim from the landlord all that was owed. *If the tenant did not claim his furnishings, the warehouseman could, after the expiration of the thirty day period, serve the notification described in (a), (b) and (c) of Sec. 7–210(2).* The notification is to be served by personal delivery or by registered or certified mail. . . . ˙ Among other things, the notification must contain a demand for payment within a specified time not less than ten days after receipt and a statement that if the claim is not paid within that time, the goods will be advertised and sold at auction. *At any time before the sale, the tenant may claim the goods and take possession of same without payment. If he fails to do so, the goods may be sold as provided in Sect. 7–210(2), but the proceeds must be held by the warehouseman for the benefit of the tenant. The warehouseman may look only to the landlord for payment of the warehouse charges.*

.  .  .  .  .

*Petitioner may claim her furnishings at any time and may take possession of same without being obligated to make any payment to respondent. In order to exercise this right petitioner must remove said furnishings from respondent's warehouse.* If petitioner does not so remove her furnishings, they may be sold in accordance with the procedure described above. *If sold, the proceeds must be held by respondent for the benefit of petitioner. Respondent may look only to the landlord for payment of storage charges."*

*Id.* 540 N.Y.S.2d at 655–56 (emphasis supplied).

The *Young* court concluded that the sale of the property had to be stayed because of the lack of compliance with U.C.C. 7–206 and U.C.C. 7–210(2).

■ In addition to our determination that Republic did not acquire a warehouse-man's lien, the record before us reflects that the notice of sale published in the newspaper provided that:

"Public sale at auction of the herein after goods, wares, and merchandise will be sold at public auction in the City of Indianapolis, Indiana after April 10, 1986, to satisfy warehouse liens, including reasonable charges for notices, advertisements, and sale.

The persons whose accounts such goods are held are as follows:

10–10–85.   Rita Green & Ronald Moore, 2257 Braeburn E. Drive, Indianapolis, Indiana 46219.   Consisting of Lot 10. Amount due: 580.00."

*Record* at 33A.

The published notices did not contain the exact date of the sale which is a requirement of IC 26–1–7–210(2)(f)(1988).   The record is devoid of any evidence demonstrating that Moore and Green were provided with notice that their property would be auctioned on November 15, 1986.   Moreover, Republic did not make a specific demand for payment.   In light of the foregoing, Republic's sale of the property was improper.

■ We also reject Republic's contention that it was entitled to a lien in accordance with IC 32–7–3–6 (1988) which provides:

"If the verdict of the jury, or the finding of the court be for the plaintiff, judgment shall be rendered thereon that he have possession of said premises; recover the damages assessed, and his costs; *and if required by such plaintiff or agent, the justice shall issue a writ, directed to some constable of the county, commanding him to deliver said premises to said plaintiff, by removing the defendant and his goods therefrom, or otherwise, so that the plaintiff have complete possession thereof, and also to levy such damages and costs, of the goods of said defendant as might be done by virtue of a writ of fieri facias."*

(Emphasis supplied.)

Although Republic relies upon the refer-

ence to the writ of *Fieri facias*,[4] IC 32–7–3–6 is clearly designed to benefit the party awarded a judgment. Republic's reliance on the writ of *fieri facias* and IC 32–7–3–6 is misplaced inasmuch as it was not awarded a judgment of any kind and it was not a party to the proceeding in small claims court involving Moore, Green and Braeburn Apartments.

Even if Republic could successfully claim that the constable was merely levying on the goods to benefit the landlord, the record is devoid of any evidence establishing an agency relationship between Braeburn Apartments and Republic. While the *constable* may have been acting for the benefit of Braeburn Apartments in accordance with IC 32–7–3–6, it is apparent from the record before us that Republic *acted only on behalf of itself* to satisfy the accrued storage charges when it had the property sold. Moreover, there is no evidence suggesting that Republic tendered any part of the proceeds obtained from the sale of Moore and Green's property to Braeburn Apartments.[5]

■ While the common law is often a grab-bag into which courts and lawyers reach for applicable precedent, there is no such precedent here. Republic is not entitled to a common law lien merely because of the existence of "a debt and possession." *See Appellee's Brief* at 5. In discussing the viability of common law liens this court has observed:

> "Although common law liens are still recognized in Indiana, *e.g.*, *Hendrickson & Sons Motor Co. v. Osha* (1975), 165 Ind. App. 185, 203, 331 N.E.2d 743, 757, *trans. den.* (garageman's lien), in order to have a legal remedy for the enforcement of a common law lien, statutory authority must exist. In other words, today common law liens are creatures of statute, and, when there is no express

statute authorizing a lien on land, an instrument purporting to do so is void."

*Terpstra v. Farmers and Merchants Bank* (1985), Ind.App., 483 N.E.2d 749, 755–56, *trans. denied* (footnote omitted). Moreover, in *Stern & Son, Inc. v. Gary Joint Venture* (1988), Ind.App., 530 N.E.2d 306, this court affirmed the trial court's grant of summary judgment entered in favor of the defendant-appellee, Gary Joint Venture (GJV), when Stern & Son (Stern), the plaintiff-appellant contractor sought to foreclose a purported mechanic's lien held against GJV. In concluding that Stern failed to establish GJV's "active consent" to the improvements made by Stern that is required for the maintenance of a mechanic's lien, we observed that:

> "Mechanic's liens were unknown at common law and are purely creatures of statute. As a consequence, mechanic's liens can only exist when the claimant has complied with the applicable statutory steps. The courts generally have followed a rule of strict construction in terms of adherance [sic] to the requirements for creating a lien, and a rule of liberal application of the remedial aspects of the mechanic's lien statutes. *Mid America Homes, Inc., v. Horn* (1979), 272 Ind. 171, 396 N.E.2d 879.

> Indiana's Mechanic's Lien Statute is found at Ind.Code 32–8–3–1 *et. seq.* (1982). Before a mechanic's lien can attach to real estate, the statute's absolute first requirement is that the landowner consented to the improvements on which the lien is based. *St. Joseph's College et al. v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865.

. . . . .

Stern now seeks to destroy GJV's bargained for protection, because it chose to contract with what amounts to a strang-

---

4. This term is defined as "[m]eans that you cause to be made. In practice, a writ of execution commanding the sheriff to levy and make the amount of a judgment from the goods and chattels of the judgment debtor." *Schuler v. Langdon* (1982), Ind.App., 433 N.E.2d 841, 846, *trans. denied,* (Staton, J. dissenting) (quoting *Blacks Law Dictionary* 754 (1968)).

5. As a judgment creditor, Braeburn Apartments could exercise *its* rights under IC 32–7–3–6. *See Whipple v. Shewalter* (1883), 91 Ind. 114; *Strasser v. Powell* (1961), 131 Ind.App. 508, 172 N.E.2d 439. In the absence of any evidence to the contrary, we will not assume that Republic sold the property for Braeburn's benefit.

er. *This intent is not within the purposes of the mechanic's lien statute and the trial court correctly found that Stern was not entitled to maintain its mechanic's lien."*

*Id.* at 308-09 (emphasis supplied).

In light of *Stern & Son* and *Terpstra,* we can only conclude no warehouseman's lien is available to Republic. We also conclude that the specific terms of our statute, IC 26-1-7-209(1), controls our decision because a lien in favor of a warehouseman is created only if the owner of the property acts as bailor.

As Republic did not hold a valid warehouseman's lien, its sale of Moore and Green's property was improper.[6] Moore and Green's complaint should not have been dismissed.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

SHIELDS, P.J., and GARRARD, J., concur.

---

6. While our holding concludes that Republic did not possess a valid warehouseman's lien on Moore and Green's property, Republic could have pursued an action in quantum meruit, obtained judgment, and then executed upon that judgment in order to recover its storage fees.