*793 OPINION OF THE COURT
Peter B. Skelos, J.
By order to show cause dated June 18, 1998, the Village of Hempstead (Village) moved to preliminarily enjoin the Sheriff of Nassau County (Sheriff) from conducting evictions in a manner that violates section 116-6 of the Code of the Village of Hempstead (Village Code). The verified complaint, served simultaneously with the motion, sought to permanently enjoin this practice. Thereafter, the Sheriff cross-moved to dismiss the action asserting the court’s lack of subject matter jurisdiction, plaintiff’s lack of standing, and plaintiff’s failure to state a cause of action.
By order dated November 4, 1998, the Honorable John DiNoto dismissed those portions of the Sheriff’s cross motion asserting lack of subject matter jurisdiction and standing. The court converted the Village’s motion for a preliminary injunction and the Sheriff’s remaining contention that the plaintiff had failed to state a cause of action into a motion for summary judgment. Thereafter, the Sheriff moved to reargue the earlier motion maintaining that outright dismissal of the action was required under the Municipal Home Rule Law. He argued that said law deprived the Village of standing. Justice DiNoto granted reargument and by order dated March 9, 1999 dismissed the complaint and denied the Village’s application for a preliminary injunction.
In his March 9, 1999 order recalling and vacating his earlier order, Justice DiNoto concluded that section 11 (1) (e) of the Municipal Home Rule Law prevents the Village from adopting any ordinance which “[a]pplies to or affects the courts.” Justice DiNoto reasoned that since the Sheriff is mandated by State statute to execute warrants of eviction, the Village may not enact a local law interfering with the Sheriff’s performance of that duty.
The Village appealed Justice DiNoto’s decision. By decision and order dated March 13, 2000, the Appellate Division reversed Justice DiNoto’s order of March 9, 1999, and, upon re-argument, denied the Sheriffs cross motion and reinstated the Village’s complaint (Incorporated Vil. of Hempstead v Jablonsky, 270 AD2d 310). The Appellate Division concluded that “[i]f applied to the Sheriff, § 116-6 of the Code would not conflict with any existing State statute,” and thus does not violate Municipal Home Rule Law § 11 (1) (e). The Sheriff moved in the Appellate Division for reargument and/or leave to appeal to the Court of Appeals. That motion was denied on May 10, 2000.
*794 In the interim, on March 20, 2000, the Village renewed its earlier motion in the Supreme Court seeking a preliminary injunction. While settlement discussions between the parties ensued, the motion was made returnable in September. When the new deputy county attorney representing the Sheriff failed to timely oppose the motion by the submission date, Justice DiNoto issued a memorandum decision dated October 23, 2000 granting plaintiffs motion for a preliminary injunction on default. Despite attempts by the deputy county attorney to remedy the default without resort to motion practice, Justice DiNoto issued a judgment for the requested injunction on December 19, 2000. Shortly thereafter the Sheriff moved by order to show cause to vacate the judgment and the underlying default, and sought to oppose the Village’s motion for a preliminary injunction on the merits.
The case was administratively transferred to the undersigned upon the expiration of Justice DiNoto’s term of office. By order dated January 26, 2001, the undersigned granted the Sheriffs motion to vacate the default and argue the motion for an injunction on the merits. Finding no prejudice to the Village other than the accumulation of counsel fees, and no intent on the part of the Sheriff to abandon his defense of the action, the court concluded that a determination of the motion on the merits was favored by strong public policy considerations. Accordingly, the request for a preliminary injunction was fully briefed and orally argued before the undersigned on February 27, 2001. Having carefully reviewed all submissions and considered the arguments made by counsel, the Village’s motion for a preliminary injunction is hereby granted for the reasons set forth below.
In its motion, the Village argues that the Appellate Division has conclusively determined that the Sheriff is subject to the provisions of section 116-6 of the Village Code. As such, the court must enjoin any violation of that ordinance committed by the Sheriff in the course of executing a warrant of eviction.
The Sheriff counters that a preliminary injunction prohibiting the violation of section 116-6 would prevent him from fulfilling his duties as an officer of the court in executing warrants of eviction. He argues that there is no statutory authority permitting him to take possession of a tenant’s personal property or to place it in storage, and that he has no authority to adopt such a policy unilaterally. Thus, he argues, there is no alternate method by which he can carry out his eviction responsibilities other than by placing a tenant’s belongings on *795 the curb as is currently the practice. To the extent that this practice constitutes a violation of section 116-6 of the Village Code, the Sheriff contends that the Village has adequate remedies under the Code to redress such violations that do not impede his eviction duties. He further argues that the Village’s past efforts to enforce the ordinance against landlords judicially estops the Village from seeking an injunction against the Sheriff at this time. For these reasons, the Sheriff urges that the motion for a preliminary injunction be denied.
The Applicable Standard
The standard for granting a preliminary injunction is well established. The moving party must demonstrate a likelihood of success on the merits, irreparable injury absent the injunctive relief, and a balancing of the equities in the movant’s favor (see, MacIntyre v Metropolitan Life Ins. Co., 221 AD2d 602). While a municipality seeking to enforce its zoning regulations need not demonstrate irreparable harm where it can establish a clear violation of a valid ordinance (see, Town of Southampton v Sendlewski, 156 AD2d 669; Village of Pelham Manor v Crea, 112 AD2d 415, 416), it is not clear that this relaxed standard applies to the enforcement of nonzoning laws. In any event, where, as here, the injunctive relief would upset the status quo and grant the ultimate relief requested, the movant has the heightened burden of showing that extraordinary circumstances warrant the relief (see, Rosa Hair Stylists v Jaber Food Corp., 218 AD2d 793, 794). The Village has satisfied this heavy burden,
a. Likelihood of Success
After careful consideration, this court has determined that the Village is likely to prevail on the merits.
The Sheriff is the enforcement officer of the District Court of the County of Nassau (see, Adams v County of Rensselaer, 66 NY2d 725; Enstrom v New York, 258 App Div 672), and as such is charged with putting a landlord petitioner “into full possession” pursuant to a warrant of eviction duly issued by the District Court after a summary dispossess proceeding under RPAPL article 7 (see, RPAPL 749 [1]; County Law § 650). The long-standing practice by which the Sheriff executes the mandate of the court is to physically remove the tenant’s possessions from the subject premises and place them at the curb adjacent to the premises.
The Village contends that the practice of leaving personal property at the curb is a violation of section 116-6 of the Village Code. That section provides:
*796 “Boxes, litter and refuse in streets or sidewalk areas.
“No person shall pass, leave or cause or permit to be placed or left upon any street or sidewalk area any boxes, papers, goods, wares, merchandise, show stands, dirt, sweepings, litter, garbage or refuse of any kind or character whatsoever, unless the same shall be placed for collection in accordance with the provisions of Chapter 74, Article II of this code” (emphasis added).
Chapter 74 of the Village Code provides in relevant part for curbside collection of garbage, rubbish and refuse by the Department of Sanitation at such hours and under such conditions as the Board of Trustees shall establish, and provides for the enforcement of such rules and penalties for the violation of same.
The Sheriff contends that he is exempt from complying with section 116-6 because he is not subject to the enforcement provisions of section 74-5. By its terms, section 74-5 is enforceable only against the “owner, lessee, agent, occupant or person in possession and control of the premises.” Since he is none of the above, but merely the officer charged with executing a warrant of the court, the Sheriff argues that he cannot be expected to comply with section 116-6 of the Village Code.
This is simply not the case. While the Sheriff is correct in his assertion that he is not subject to the enforcement provisions of chapter 74, it does not necessarily follow that he is immune from complying with the more general provisions of the antilittering ordinance. By its very terms, section 116-6 applies to any “person” who causes a variety of articles to be left on any street or sidewalk. That ordinance prohibits such action unless same is for the purpose of collection as set forth in chapter 74. As the Sheriff readily admits, when he causes a tenant’s personal property to be placed at the curbside, he is not doing so for purposes of collection in accordance with the provisions of chapter 74. While any attempt to enforce the criminal sanctions contained in chapter 74 against the Sheriff would be of dubious merit (see, People v Pius, 157 Misc 2d 805, 810), the Village’s attempt to compel compliance with section 116-6 of the Village Code against any “person,” including the Sheriff, by way of injunction is certainly consistent with its police powers (see, Municipal Home Rule Law § 10 [4] [b]; Code of Village of Hempstead § 1-18). The Village has the right to enjoin conduct deemed dangerous to public health (see, Incorporated Vil. of *797 Babylon v Anthony’s Water Café, 137 AD2d 791, 792). Moreover, the Village is not judicially estopped from enforcing the law against any one “person” in violation of same simply because they have sought enforcement against another “person” in the past. In seeking to enforce the ordinance against all violators, the Village is hardly guilty of taking inconsistent positions (cf. Ford Motor Credit Co. v Colonial Funding Corp., 215 AD2d 435, 436).
The Sheriffs argument that he is outside the ambit of the law because he is merely the landlord’s agent in removing the property to the curbside is equally unpersuasive. Subject to certain limitations, the warrant of eviction makes the Sheriff responsible for ensuring the removal of the tenant’s possessions from the subject premises. To the extent he oversees the placement of these items at curbside in executing the command of the warrant, he is not an agent of the landlord, but “as in all other actions and duties, a separate, autonomous governmental entity” (People v Pius, supra, at 807). The fact that the landlord is required to execute an acknowledgment of possession and a written waiver relieving the Sheriff of any responsibility in securing the premises does not absolve the Sheriff of his obligation to carry out his duties in a law-abiding manner and to comply with valid ordinances.
Contrary to the Sheriffs position, the injunction sought would not conflict with his legal mandate to execute duly issued warrants of eviction. In this regard, it is significant that the Appellate Division has already determined that section 116-6 does not violate Municipal Home Rule Law § 11 (1) (e) and “[i]f applied to the Sheriff, § 116-6 of the Code would not conflict with any existing State statute” (Incorporated Vil. of Hempstead v Jablonsky, 270 AD2d 310, supra [emphasis added]). This is the law of the case. It necessarily follows that compliance with the Village ordinance would not prevent the Sheriff from performing his statutory duties. It is for the Sheriff, not the court, to determine the most appropriate manner in which to perform these duties consistent with section 116-6 of the Village Code.
The Sheriff advances no credible argument as to why it would be impossible, impractical or even difficult to comply with section 116-6 while executing his eviction duties. Compliance with this ordinance will not prevent him from putting a landlord into full possession of a subject premises. The ordinance does not prohibit the removal of personal property from a subject premises, it simply prohibits the placement of such property at *798 the curbside. The Sheriffs argument that he is without authority to take possession of a tenant’s belongings upon removal from the premises ignores the fact that he can arrange for the removal of same without actually taking possession of these items. According to the Sheriff, the landlord is required to sign a written waiver accepting possession of a subject premises immediately prior to the execution of a warrant. The Sheriff contends that by virtue of the landlord’s execution of the waiver form, the landlord assumes full responsibility for removing the tenant’s possessions from the subject premises and relieves the Sheriff of that responsibility. This is certainly consistent with the landlord’s duty to store the tenant’s property, at least for a reasonable period of time, on notice to the tenant (see, Mutzner v Comptroller of City of N. Y., 1995 WL 495803, *6, 1995 US Dist LEXIS 11959, *19 [SD NY, Aug. 18, 1995, Sotomayor, JJ, citing Priester v R. F. H. Realty Corp., 13 Misc 2d 446; Matter of Young v Warehouse No. 2, 143 Misc 2d 350, 352).
It appears that the Sheriff has broad discretion in carrying, out his eviction duties. The offer of proof by Sheriffs counsel at oral argument set forth a detailed procedure for the execution of a warrant of eviction. Save for the service of a statutory 72-hour notice pursuant to RPAPL 749 (2), not a single step in this procedure is mandated by statute or order of the court. The procedure has been developed by the Sheriff in his discretion as the means by which he will carry out the mandate of the court. As the affidavit of the Deputy Sheriff in charge of enforcing warrants of eviction states:
“Prior to each eviction performed by the Sheriffs Office, the landlord executes a written waiver form * * * accepting possession of the premises. The Sheriffs role in the eviction process is to ensure that the tenant’s possessions are removed from the subject premises in an orderly and peaceful manner. To that end, the Sheriff arranges for a moving contractor, at the landlord’s expense, to remove the tenant’s possessions from the subject premises and place them in the public domain for access by the tenant. Inasmuch as the tenant’s possessions are simply removed to the public sidewalk, no moving truck or similar vehicle is utilized. The movers are the ones that actually place the tenant’s possessions on the public sidewalk. The mover is paid from a separate account maintained by the Sheriff for this purpose, with funds paid in advance by the landlord.”
*799 The Sheriff collects these advance expenses from the landlord pursuant to CPLR 8013 (c), which specifically provides for “reimbursement of all expenses necessarily incurred in the execution of any mandate and in the protection, presentation, transportation or sale of property” (emphasis added). This same statute clearly provides the Sheriff with the authority required to charge landlords any additional expense incurred in transporting the tenant’s personal belongings to a location other than the street or sidewalk adjacent to the subject premises in violation of section 116-6. Whether this other location is a storage facility, pick-up depot, or someplace else shall remain within the Sheriff’s discretion.
If the landlord refuses to pay the transportation expenses in advance, or does not agree to reimburse the Sheriff for same, the Sheriff need not remove the personal property from the premises (see, Ide v Finn, 196 App Div 304, 312). Unlike the situation in Matter of 667 E. 187th St. Corp. v Lindsay (54 Misc 2d 632), the Village of Hempstead is under no statutory duty to protect these belongings once they are removed to the curb, and there is no requirement that the Village remove and store such household effects for the benefit of the tenant. This is ultimately the burden of the landlord, who may legally choose to accept repossession of a premises without the removal of a tenant’s personal property (see, Regan v Tally Ho Trucking Co., 103 Misc 2d 269). In such case, the landlord would be entrusted with the duty to store a tenant’s property for a reasonable period of time (see, Mutzner v Comptroller, 1995 WL 495803, *6, 1995 US Dist LEXIS 11959, *19 [SD NY], supra; Priester v R. F. H. Realty Corp., 13 Misc 2d 446, supra; Matter of Young v Warehouse No. 2, 143 Misc 2d 350, supra).
The landlord may certainly demand that the Sheriff complete the eviction by removing the tenant’s personal property. In such a case, it is the Sheriff who determines the method by which he carries out this mandate. Just as the Sheriff need not act in the event the landlord refuses to advance the fees incurred in transporting or protecting the property, the Sheriff must refuse to act in the event compliance with the landlord’s request would constitute a violation of a valid local ordinance that does not otherwise conflict with State statutes. Since the Appellate Division has determined that, as applied to the Sheriff, section 116-6 of the Village Code does not violate any State law, the Sheriff, in carrying out his ministerial duty under RPAPL 749 (1), must do so without violating the local ordinance.
*800 Although the issuance of a preliminary injunction does not constitute a final adjudication of the merits of the claim (see, Preston Corp. v Fabrication Enters., 68 NY2d 397; Bauer v Planning Bd., 159 AD2d 532), the court should go beyond the complaint to assess the underlying validity of the substantive merits (Guggenheimer v Ginzburg, 43 NY2d 268, 272). Based on the affidavits submitted and arguments heard, the court is convinced that the Sheriff can carry out his mandate under the Real Property Actions and Proceedings Law without violating section 116-6 of the Village Code. As such, the likelihood of the Village’s success on the ultimate merits is sufficient to warrant the preliminary injunction,
b. Irreparable Harm
It has been brought to the court’s attention that there are close to 200 evictions which take place in the Village of Hemp-stead each year. Surely, not every eviction involves the removal to the curb of the number of boxes, cartons and other personal property as depicted in the photographs submitted for the court’s consideration. Nevertheless, those that do, pose an immediate danger to public safety, health and general welfare. As plaintiffs counsel persuasively argues in his reply affirmation: “There is irreparable harm to the village in having its public sidewalks blocked by cartons, furniture, and debris; there is irreparable harm to the village in having its public sidewalks awash in litter and debris; there is irreparable harm to the village in having cartons and furniture strewn on its public sidewalks that serve as an invitation to children and scavengers to do their mischief; there is irreparable harm to the village in presenting a false image to the public of a decaying village environment.”
As proof of the specific danger posed by the ongoing violation of section 116-6 of the Village Code, the Village submitted the affidavit of Joseph Simone, Jr., a lieutenant in the Hempstead Volunteer Fire Department, who recounted the scene in front of his firehouse several years ago. Following the eviction of a tenant in a neighboring apartment building, approximately 100 or so boxes were placed on the public sidewalk outside of the dwelling. These belongings attracted many mischievous children who opened the boxes and scattered their contents in the roadway and sidewalk. Many scavengers stopped their cars and parked on the firehouse ramp blocking quick egress by emergency vehicles. The police were called to remove the vehicles. Other motorists simply stopped in the roadway, blocking traffic and creating a dangerous condition. According to the *801 affidavit of Mayor James A. Garner, this is a “graphic illustration of the kinds of problems that have arisen and continue to arise under the procedures adopted by the Sheriff in conducting evictions” in violation of section 116-6 of the Village Code.
The court concludes that the Sheriff’s continued violation of section 116-6 of the Village Code in the course of conducting evictions constitutes an irreparable injury with potential for immediate and specific harm to the safety, health and general welfare of the public.
c. Balancing of the Equities and Extraordinary Circumstances
“[W]hen the court balances the equities in deciding upon injunctive relief, it must consider the ‘enormous public interests involved’ ” (Seitzman v Hudson Riv. Assocs., 126 AD2d 211, 214, quoting Barney v City of New York, 83 App Div 237, 241). It appears that this litigation has its genesis in the Village’s laudable attempt to protect its citizens from the final stage of the often humiliating experience of an eviction proceeding and, more importantly, to preserve the safety, integrity and aesthetic qualities of the Village. The Village has long attempted to forge a political resolution to the impasse that prevents it from achieving this goal. In a letter dated January 15, 1992, Trustee Lance D. Clarke wrote to the County Executive asking that the County reconsider the manner in which the Sheriff executes evictions in the Village of Hempstead:
“It is often a harsh and rude awakening to a tenant who is evicted that they have lost all or most of their furniture and other belongings to scavengers and thieves * * * who pass on the street helping themselves to the evicted person’s property. While it may be true that the evicted tenant is guilty of not paying rent for holding over an apartment, it is to say the least, demoralizing and frustrating for individuals to lose the contents of one’s home taken by DPW or persons in the street. It is embarrassing to the Community as a whole. If the furniture is not picked up right away, we are often left with items scattered on the sidewalk and in the street.”
Trustee Clarke went on to suggest some alternative means by which the evictions could be accomplished in a more humane manner and without adversely affecting the aesthetic qualities of the Village. Some years later, Mayor James A. Garner wrote to the Sheriff requesting that he modify the means by which his deputies execute warrants of eviction in the Village of Hempstead. The Village also sent the Sheriff a notice to cease *802 and desist from any violation of section 116-6 of the Village Code. The Sheriff and the County have resisted the entreaties of the Village officials for over a decade. In doing so they frequently rely on the misplaced belief that legislative or executive action is required to authorize a different procedure. With no action by the County Legislature or the County Executive pending, the Village officials apparently felt compelled to seek a judicial solution where executive or legislative action may have been more desirable. They have satisfied the legal basis for doing so.
Although it appears that the Sheriff places the evicted tenant’s property at the curbside in an orderly fashion, the mere presence of these items in the public domain creates an opportunity for theft and vandalism that is frequently acted upon. This not only impairs the interest of the needy tenant whose property might be lost, stolen or otherwise damaged by exposure to inclement weather, but it adversely impacts on the community as a whole. As Mayor Garner states in his affidavit, the current procedures result in litter and debris being strewn upon streets and sidewalks creating a hazard to pedestrians and motorists. Such behavior also results in an aesthetically displeasing sight that causes the Village to be viewed negatively.
The State Constitution and the Municipal Home Rule Law grant the Village broad powers with respect to the protection of the health and safety of those who reside within municipal boundaries (see, NY Const, art IX, § 2, cl [c]; Municipal Home Rule Law § 10 [1] [ii] [a] [12]). It is well settled that aesthetics is a valid subject for the legislative exercise of the police power (see, People v Stover, 12 NY2d 462, 467). The Supreme Court of the United States has recognized the breadth, validity and importance of protecting and promoting the concept of general welfare. “ ‘The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled’ ” (People v Stover, supra, at 468, quoting Berman v Parker, 348 US 26, 33 [Douglas, J.]). The Village of Hempstead seeks to promote the general welfare by enforcement of section 116-6 of the Village Code, and it is certainly within its rights to do so.
A preliminary injunction that grants the ultimate relief requested may issue where, as here, the movant has established a clear right to the relief (see, 7A Weinstein-Korn-Miller, NY *803 Civ Prac ífíl 6301.19, 6301.20, 6301.20a). The court recognizes that injunctions are frequently issued to preserve the status quo and that it should be wary of upsetting same. However, in the appropriate circumstance, where the “ ‘condition of rest is exactly what will inflict the irreparable injury to the complainant,’ ” a court of equity may issue a preliminary injunction that grants the ultimate relief requested (see, Chiasson v New York City Dept. of Consumer Affairs, 132 Misc 2d 640, citing Buchman v Harrington, 184 NY 458, 464). The grant of the preliminary injunction will upset the long-standing method by which the Sheriff executes a warrant of eviction, but it is precisely the status quo that is causing irreparable injury to the Village.
The Village has no remedy at law and seeks none. It cannot be compensated by any measure of money damages. Without the issuance of an injunction, the Village cannot prevent the reoccurring nuisance created by the curbside dumping of personal property belonging to evicted tenants. Absent an injunction against the Sheriff, the Village will be left in the untenable position of having to seek injunctive relief against every landlord in advance of the execution of a warrant of eviction. It is only through a mandate which prohibits the Sheriff from placing personal property on the curb that the Village can effectively enforce the provisions of section 116-6 of the Village Code. The issuance of the injunction will not prohibit the Sheriff from carrying out his statutory duties. It will only require him to exercise his broad discretion in finding a method of performing this duty that will not result in a violation of a valid ordinance enacted to promote the safety, health and general welfare of the residents of the Village of Hempstead.
Upon consideration of the Village’s purpose in enforcing section 116-6; the long history of its attempts to reach a political resolution of this issue; the County’s failure to act; the irreparable harm suffered by the Village, the general public and the evicted tenants; the absence of a viable remedy at law; the Village’s demonstrated right to the relief requested; and the availability of alternative methods by which the Sheriff can meet his statutory obligations, a balancing of the equities clearly favors the issuance of a preliminary injunction.
Accordingly, it is hereby ordered that, until further order of the court, the Sheriff of the County of Nassau, his deputies, agents, servants and employees, are enjoined and restrained *804 from executing duly issued warrants of eviction in a manner that violates section 116-6 of the Code of the Village of Hemp-stead.