OPINION OF THE COURT
Dakota D. Ramseur, J.
Plaintiff Habibah Caldwell, pro se, commenced this action against defendant 928 Gerard Avenue Partners for “failure to return property” and “loss of personal property” stemming from an unlawful eviction on December 11, 2015.[1] Plaintiff alleges that she suffered damages of $25,000 under each cause of action. At trial, plaintiff, plaintiff’s neighbor Trena Stone, defendant’s managing member Moshik Regev, defendant’s construction manager David Mahendra Datt, and New York City Marshal John Villanueva testified. Having had the opportunity to observe the witnesses and consider their testimony and the evidence in the record, the court finds in favor of plaintiff in the amount of $10,104, plus interest.
Background Facts[2]
Plaintiff testified credibly on her own behalf that she and her father had lived in the apartment for 15 years.[3] The prior landlord, Basil Tsangarinos, commenced an eviction proceeding which ultimately resulted in eviction on December 11, 2015 before plaintiff and her father were ultimately restored to possession (tr 7:20-21, 61:15-16; defendant’s exhibit A). Plaintiff claims that in the period between eviction and restoration, defendant unlawfully discarded property belonging to plaintiff and her father.[4] Plaintiff also claims additional damages stemming from defendant’s failure, after eviction, to shift the Con Edison account to defendant’s name.
*859 The marshal, a disinterested witness who testified credibly with assistance from his contemporaneous notes, clarified the circumstances and time line surrounding the eviction. The marshal confirmed that the prior landlord commenced the eviction proceeding (tr 41:15-19). On November 25, 2015, when the marshal appeared to effectuate the eviction, plaintiffs father, “an elderly person . . . under doctor’s care,” answered the door (tr 45:12-19). Acting on his observations, the marshal aborted the eviction and notified Adult Protective Services (APS) (tr 45:20-25). APS ultimately authorized the eviction on December 10, 2015, and the marshal executed the eviction the following day (tr 46 et seq.; defendant’s exhibit B). On that day, after the locks were changed, the marshal drove plaintiff’s father to Housing Court (tr 50:24-51:1). The marshal does not recall plaintiff’s father asking to retrieve any items during or after the eviction (tr 42:17-21).[5]
The neighbor, who was present on the eviction date, also testified credibly. After the marshal had left, the neighbor observed through her window unknown individuals placing the belongings of plaintiff and plaintiff’s father “in a U-Ha[u]l truck, in front of the building,” and later saw plaintiff’s property “sitting on the sidewalk and people going through it” (tr 25:24-26:7, 26:23-27:1, 29:1-29:22).
Moshik Regev, defendant’s managing member, testified for defendant. Mr. Regev testified that defendant took ownership of the building on December 9, 2015, and confirmed that Housing Court ultimately found in plaintiff’s favor and restored plaintiff to possession of the apartment; according to Regev, “due to a technicality, because [defendant] took possession two days before the legal eviction took place” (tr 61:5-9, 73:14-19).[6] Regev was not present when the marshal arrived to effectuate the eviction, but testified that Ran Haral, the minority owner of the building, and Rob Paulino, the property manager at the time, were present (tr 62:17-63:6).
After the eviction, Regev testified that he surveyed the apartment with his employees, where Regev observed several boxes *860 that he instructed the employees to transfer to the ground floor. Regev testified that plaintiff’s father “only cared about his precious books” and “writings” (tr 64:15-18). According to Regev, plaintiffs father personally expressed that “everything else was . . . meaningless and can be thrown away” (tr 64:23-25). Regev testified, however, that they merely removed all property to the ground floor, then asked plaintiff, via four hand-delivered letters and numerous text messages, to remove the items (tr 65 et seq.).[7] When asked by plaintiff what was removed from the apartment by defendant and stored—specifically, “beds,” “cribs,” and “TVs,” Regev did not deny that those items were present (tr 75:20-25 [“Everything that was stored in the apartment, other than garbage”]).
Discussion
Where, after eviction, a tenant’s property is removed by the marshal at the landlord’s request or by the landlord himself, the landlord is responsible for storing the property for a reasonable period of time—per the Uniform Commercial Code in an analogous context, a minimum of 30 days after notice to remove the items (Wilson v CRL Mgt., Inc., 14 Misc 3d 231, 232-233 [Rochester City Ct 2006], citing UCC 7-206; see also UCC 1-205 [a] [“(w)hether a time for taking an action required ... is reasonable depends on the nature, purpose, and circumstances of the action”]; see also Matter of Young v Warehouse No. 2, 143 Misc 2d 350, 352 [Civ Ct, Richmond County 1989] [where evicted tenant’s property stored by landlord and city marshal at warehouse, landlord must pay for storage]).
Any bailee holding another’s property is responsible for the property’s safekeeping and “perhaps could be liable in negligence” for failing to do so (Matter of Charles E. v Frank E., 72 AD3d 1439, 1441 [3d Dept 2010], citing Wilson, 14 Misc 3d at *861 232-233). The failure to safeguard or store items of value left in the leased premises at the time of the execution of the warrant of eviction can result in a finding of liability against a landlord (id.; see also Jo v JPMC Specialty Mtge., LLC, 135 F Supp 3d 54, 59-60 [WD NY 2015]). Improper handling and storage could include, for example, placing the items on the curb rather than actually placing them into storage (Wilson, 14 Misc 3d at 232-233).
The court finds, by a preponderance of the credible evidence, that defendant’s agents, the only people who would have had access to the apartment after eviction, negligently removed plaintiff’s property, including the large items listed in plaintiff’s exhibit 1. The court bases this finding primarily on the credible testimony of plaintiff, her neighbor, and the marshal. The neighbor witnessed the eviction as it occurred. She specifically observed, in addition to boxes having been placed on the curb, the presence of a U-Haul; that is, a truck large enough to transport the large items identified by plaintiff as having been discarded by defendant (plaintiff’s exhibit 1). Notably, no other witnesses refuted this testimony. Neither Regev nor Datt were present during the eviction itself. Nor was plaintiff in the apartment during or immediately after the eviction. Similarly, plaintiff’s father was not present because the marshal had transported him to Housing Court.
With respect to the other items in the apartment—that is, items small enough to be placed in boxes—there is also no dispute that the boxed items stored on a lower floor were eventually discarded. Per the testimony of both of defendant’s witnesses, this was done several months after the lawsuit had already been commenced. Even if defendant had provided proper notice to plaintiff—and the court finds that it did not— that would not fully mitigate defendant’s negligence.
Where evidence is discarded during pending litigation, at a time when a defendant knew or should have known, even absent a specific demand by the plaintiff, that evidence would bear upon the parties’ dispute, sanctions are appropriate (see Sage Realty Corp. v Proskauer Rose, 275 AD2d 11 [1st Dept 2000]). As one court has observed “the lynchpin for spoliation sanctions under New York law ... is prejudice” (Fitzpatrick v Toy Indus. Assoc., Inc., 2009 NY Slip Op 30083[U], *16 [Sup Ct, NY County 2009]). The key issue when considering a spoliation sanction is often the degree of willfulness with respect to the refusal or failure to disclose information which ought to *862 have been disclosed (Ferrara Bros. Bldg. Materials Corp. & Best Concrete Mix Corp. v FMC Constr. LLC, 54 Misc 3d 529, 534 [Sup Ct, Queens County 2016]). Here, the court credits neither defendant’s assertions that it sent multiple written demands to plaintiff to remove her property from storage, nor defendant’s assertions that plaintiff’s father requested to maintain only certain items. As a result, the court finds that defendant’s actions—which, at best, can be characterized as negligent—impeded (and nearly foreclosed) plaintiff from making her case. Relying on this finding, the court draws from defendant’s conduct a negative inference (see also Reichman v Warehouse One, 173 AD2d 250, 252 [1st Dept 1991] [“(a)n unfavorable inference may be drawn when, as in this case, a party fails to produce evidence which is within his (or her) control and which he (or she) is naturally expected to produce”]).
Liability already having been established as a result of defendant’s conduct, this negative inference gains significance in the analysis of damages. “[T]he rule of certainty as applied to the recovery of damages does not require mathematical accuracy or absolute certainty or exactness, but only that the loss or damage be capable of ascertainment with reasonable certainty” (Reichman v Warehouse One, 173 AD2d 250, 252 [1st Dept 1991]). Normally, the proper measure of damages is the actual value of the items, to be determined by taking into account, in addition to the original cost of the articles, other factors including the extent to which the items have deteriorated or depreciated through use and damage and evidence of present reasonable value (Finnerty v Freeman, 176 Misc 2d 220, 222 [App Term, 2d Dept 1998], citing 36 NY Jur 2d, Damages §§ 83, 84; Elliott v United States, 250 F Supp 322, 324 [WD NY 1965] [$200 per year on a $2,600 harp is a reasonable depreciation allowance]; Lubin v Finkelstein, 82 NYS2d 329, 336 [Sup Ct, NY County 1948] [depreciation deduction “less than 7.90% of the value of the furniture and fixtures” is not “unreasonably high”]).
The absence of market value for an item of personal property damaged by another does not restrict the owner to nominal damages; rather, recourse may then be had to some other rational method of ascertaining the value of the property from such elements as are attainable (36 NY Jur 2d, Damages § 84; MacGregor v Watts, 254 App Div 904 [2d Dept 1938]). In such cases, the actual or intrinsic value of such property is deemed *863 to be the correct measure of damages (Robbins v Cooper Assoc., 14 NY2d 913 [1964]). Value to the owner may determine the compensation for loss of property which has no market value, especially where it is peculiarly valuable to its owner (Blauvelt v Cleveland, 198 App Div 229 [4th Dept 1921] [dog]). The owner of a chattel is qualified by reason of that relationship alone to give his or her estimate as to its value (Peters v Berkeley, 219 App Div 261 [1st Dept 1927]).
Accordingly, based on the court’s finding that plaintiff testified credibly, and based further on the court’s negative inference against defendant stemming from defendant’s conduct, the court credits entirely plaintiff’s list of discarded items, as well as their stated values, which totals $10,104.
With respect to the items whose value is not stated—clothes, jewelry, birth certificates, “social security,” family photos, plaintiff’s father’s artwork, and most troublingly, plaintiff’s cats, there is insufficient evidence in the record for the court to quantify additional damages. Similarly, with respect to plaintiffs claim that defendant purposely failed to reassign the utility bills to the latter, plaintiff’s exhibits (two pages of utility bills) are insufficient, on their own, to establish that additional charges were incurred by defendant rather than plaintiff (or her father).
Conclusion
Based on the foregoing, it is hereby ordered and adjudged that after trial, the court finds in favor of plaintiff in the amount of $10,104, plus interest from December 11, 2015.

. “910-918 Gerard Avenue LLC” answered, by counsel, on behalf of defendant as the entity owning the subject property.

. These are the court’s findings of fact after trial, except where specific disputes or testimony are noted.

. According to plaintiff, her father Benjamin Caldwell and mother Ellen Caldwell, who are currently separated, were listed as the primary tenants on the original lease.

. On January 30, 2017, the parties stipulated that six pages of documents produced by plaintiff constituted “all of her trial evidence.” At trial, counsel for defendant confirmed that the “universe of documents” included *859 this stipulation (tr 52:23-25). The court therefore identifies the documents collectively as plaintiff’s exhibit 1.

. The court does not assign any significance to this fact, as a guardian ad litem was subsequently assigned to plaintiff’s father (tr 12:18-25). Additionally, plaintiff, whose items were allegedly discarded, was not present at the eviction.

. Neither party provided the Housing Court decision.

. The court does not credit this testimony. As an initial matter, the court credits plaintiff’s testimony that she never received the letters. None of the letters are accompanied by independent verification of service other than the testimony of defendant’s construction manager, David Mahendra Datt, who testified that he never interacted with anyone and always slid the letters under the door (tr 80 et seq.). Second, even if the letters had been served, they were all dated several months after the litigation had been started; that is, well after defendant knew that the items should have been preserved. Finally, Regev testified that he possessed text messages to plaintiff, but never introduced them into evidence (Reichman v Warehouse One, 173 AD2d 250, 252 [1st Dept 1991] [“(a)n unfavorable inference may be drawn when ... a party fails to produce evidence which is within his (or her) control and which he (or she) is naturally expected to produce”]).