■ GURDIT SAINI et al., Respondents, v TONJU ASSOCIATES et al., Respondents, and EXPERT BOILER REPAIR & WELDING, INC., Appellant. [750 NYS2d 55] —Order, Supreme Court, Bronx County (Louis Benza, J.), entered June 13, 2001, which denied defendant Expert Boiler Repair & Welding, Inc.'s motion for summary judgment dismissing the complaint and Loyalty's cross claim against it, unanimously modified, on the law, and the motion granted to the extent of dismissing the complaint as against that entity, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendant Expert Boiler Repair & Welding, Inc., dismissing the complaint as against it.

On April 9, 1997, then six-year-old Gurdit Saini was scalded by water from a bathroom faucet in the apartment where he lived with his family in the building designated as 94-06 34th Avenue, Jackson Heights, New York (the building). Approximately one month prior, the owner of the building, defendant Loyalty Realty, Inc. (Loyalty), determined that the boiler in the building had to be replaced and hired defendant Expert Boiler Repair & Welding, Inc. (Expert) to do the work. On or about March 12, 1997, Expert forwarded an agreement to Loyalty which delineated the costs of installing a temporary boiler, and the trailer to house it, which was necessary to ensure that the building would continue to have heat and hot water while the old boiler was replaced. The agreement, executed by the president of Expert and subsequently agreed to by Loyalty, provides that "[a]ll work will be performed in a neat manner and fully covered by insurance for your protection."

Although the chronology is somewhat puzzling, there appears to be no dispute that defendant Mobil Steam Boiler Rental Corp. (Mobil), which was hired by Expert, brought a temporary boiler to the building on March 6, 1997, and housed it in a trailer outside. Mobil then isolated the existing boiler and connected the temporary unit in its place by "cutting into pipes" and directly connecting to the heat exchanger, which heats water for the residents' use. Mobil contends that after the installation of the temporary boiler was complete, a Mobil supervisor tested the temperature of the hot water by running it over his hand in a slop sink located in the boiler room. The superintendent of the building, who was employed by Loyalty, maintains that he complained to Mobil on three separate occasions, beginning immediately after the temporary boiler was installed, that the water was too hot. There is no testimony that Expert was informed of these complaints and Expert denies any knowledge of them.

Plaintiff commenced the within action in August 1998 alleging, inter alia, that Loyalty, Expert and Mobil were liable for injuries sustained by the infant plaintiff from excessively hot water. Defendants answered and Loyalty interposed a cross claim against Expert for indemnification based upon the aforementioned clause in the agreement. Expert, at the close of discovery, moved for summary judgment, which was denied by the motion court on the ground that issues of fact exist as to Expert's supervision and control over the installation and operation of the temporary boiler. We disagree.

As a general rule, a principal is not liable for the acts of an independent contractor because, unlike the master-servant relationship, principals cannot control the manner in which independent contractors perform their work (*Chainani v Board of Educ. of City of N.Y.*, 87 NY2d 370, 380-381; *Kleeman v Rheingold*, 81 NY2d 270, 273-274; *Melbourne v New York Life Ins. Co.*, 271 AD2d 296, 297). The numerous exceptions to this rule, which, for the most part, are derived from public policy concerns, "fall roughly" into three basic categories: where the employer is negligent in selecting, instructing or supervising the independent contractor; where the independent contractor is hired to do work which is "inherently dangerous"; and where the employer bears a specific, nondelegable duty (*Kleeman v Rheingold, supra* at 274; *Goodman v 78 W. 47th St. Corp.*, 253 AD2d 384, 386-387).

Respondents herein primarily advance the argument that issues of fact exist as to the degree of control and the level of supervision Expert maintained over Mobil while it performed its work, and while the temporary boiler was in operation. The record, however, belies respondents' contentions. The deposition testimony of Jeffrey Moskowitz, a principal of Mobil, clearly establishes that Mobil personnel exclusively installed and maintained the temporary steam system and there is no evidence that Expert performed any work on it at all. Respondents refer to a log book which indicates that Expert personnel were in the boiler room, on various occasions, while the temporary boiler was in operation, but the mere presence of Expert's personnel on the premises is not, in our view, sufficient to raise an issue of fact as to whether they supervised or controlled Mobil's work, or as to whether Expert had actual notice of the dangerous condition.

Respondents also rely on a second exception to the general rule in that they claim that the work for which Mobil was hired by Expert was inherently dangerous. In *Chainani v Board of Educ. of City of N.Y.* (87 NY2d 370, *supra*), the Court of Ap-

peals opined that this exception, which has long been recognized by New York State, "applies when it appears both that 'the work involves a risk of harm inherent in the nature of the work itself [and] that the employer recognizes, or should recognize, that risk in advance of the contract'" (*id.* at 381, quoting *Rosenberg v Equitable Life Assur. Socy.*, 79 NY2d 663, 669). The Court of Appeals, by way of example, cited blasting, certain types of construction, and working with high tension wires.

In this matter, the exception does not apply as the danger is not inherent in the nature of the contract work, i.e., the installation of a temporary boiler, but, rather, was the result of "'more or less usual negligence'" (*MacDonald v Heuer*, 253 AD2d 795, 796, quoting Prosser and Keeton, Torts § 71, at 514 [5th ed 1984]; *see also Baraban v Orient-Express Hotels*, 292 AD2d 203, 204), in that the temperature of the water was not correctly set or monitored. As a result, we conclude that the complaint should have been dismissed as to Expert.

To the extent that the motion court, sub silentio, denied that branch of Expert's motion which sought the dismissal of Loyalty's cross claim for indemnification pursuant to their written agreement, the dismissal of that claim was unwarranted as it appears that Expert, at the very least, was required to provide insurance for Mobil's work, or was required to ensure that Mobil provide such coverage. Concur—Williams, P.J., Nardelli, Andrias and Marlow, JJ.