**Billian JO, as Personal Representative of the Estate of Mee Jin–Jo, Plaintiff,**

v.

**JPMC SPECIALTY MORTGAGE, LLC, Defendant.**

**JPMC Specialty Mortgage, LLC, Third–Party Plaintiff,**

v.

**Advanced Moving & Storage, LLC, Third–Party Defendant.[1]**

**No. 1:08–CV–00230 EAW.**

United States District Court, W.D. New York.

Signed Sept. 22, 2015.

1. Although Third–Party Plaintiff JPMC Specialty Mortgage, LLC, requested and received a Clerk's Entry of Default as to Third–Party Defendant Advanced Moving & Storage, LLC (Dkt. 186), it has not moved for default judg-

See also, 2009 WL 2424344.

ment pursuant to Fed.R.Civ.P. 55(b). As a result, the third-party action remains pending in this case.

56

Billian Jo, Ferndale, MI, pro se.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### INTRODUCTION

*Pro se* Plaintiff Mee Jin–Jo ("Plaintiff"), now deceased and represented in this action by her personal representative Billian Jo, commenced this lawsuit on March 18, 2008, alleging that Defendant improperly retained control over her property after she was evicted as a no-fault tenant from her residence. (Dkt. 1). Plaintiff asserts claims of violation of New York's Truth-in–Storage Act, conversion, and intentional torts.

This case was initially assigned to the Hon. Richard J. Arcara, United States District Judge. On August 5, 2009, Judge Arcara entered an order referring this matter to the Hon. Jeremiah J. McCarthy, United States Magistrate Judge, for hearing and disposition of all non-dispositive motions or applications, supervision of discovery, and to hear and report upon dispositive motions. (Dkt. 68).

Defendant filed a motion for summary judgment on October 16, 2012. (Dkt. 235). Plaintiff opposed the motion. (Dkt. 240). On August 13, 2013, Judge McCarthy issued a Report and Recommendation recommending denial of summary judgment with respect to Plaintiff's remaining claims[2] for alleged violation of the New York Truth–in–Storage Act, conversion, and intentional torts. (Dkt. 247).

On September 13, 2013, Defendant filed objections to the Report and Recommendation. (Dkt. 250). Defendant contends that it cannot be held liable for the actions of Advanced Moving & Storage, LLC ("Advanced") because Advanced was an independent contractor. (Dkt. 250–2 at 2).

This case was transferred to the undersigned on January 30, 2015. (Dkt. 275).

For the reasons set forth below, the Court adopts the Report and Recommendation in full. Defendant's motion for summary judgment (Dkt. 235) is denied in its entirety.

### BACKGROUND

The factual and procedural background of this case is set forth in detail in the Report and Recommendation. (*See* Dkt. 247 at 64–67). Familiarity with the Report and Recommendation is assumed for purposes of this Decision and Order.

### DISCUSSION

#### I. Standard of Review

"Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made." *Crowe v. Leroy Cent. Sch. Dist.*, 949 F.Supp.2d 435, 438 (W.D.N.Y. 2013). The Court must therefore consider *de novo* whether Defendants are entitled to summary judgment with respect to Plaintiff's Truth-in–Storage Act, conversion, and intentional tort claims. "The Court reviews unobjected-to findings for clear error." *Am. Ins. Co. v. City of Jamestown*, 914 F.Supp.2d 377, 384 (W.D.N.Y.2012).

---

2. Some of Plaintiff's claims were dismissed by Judge Arcara by Decision and Order dated August 5, 2009, following Defendant's motion to dismiss. (Dkt. 67).

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.*, 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

## II. Truth–in–Storage Act Claim

New York's Truth–in–Storage Act provides: "[a]ny consumer bailor damaged by an unlawful detention of his goods or any other violation of this article may bring an action for recovery of damages and the return of his goods." N.Y. Gen. Bus. Law § 609(1).

### A. Defendant May be Held Vicariously Liable for Advanced's Unlawful Detention of Plaintiff's Goods

█ Plaintiff argues that Defendant is responsible for Advanced's unlawful detention of her personal property, insofar as Advanced would not release Plaintiff's property without requiring a fee, and had not listed numerous items of Plaintiffs property on its inventory list, suggesting that the items were lost or stolen. (Dkt. 241 at 13–14, 21–23). Defendant's primary objection is that it may not be held liable for the actions or inactions of Advanced, an independent contractor. (Dkt. 250-2 at 8–9).

█ "[I]t has been clear in New York that a marshal has the right to remove a tenant's property of value still left in an apartment more than 72 hours after the tenant has been served with a warrant of eviction. If such property is removed by the marshal at the landlord's request or by the landlord, the landlord is responsible for the cost of storing the property for a reasonable period until it is claimed by the tenant." *Wilson v. CRL Mgm't, Inc.*, 14 Misc.3d 231, 232–33, 829 N.Y.S.2d 424 (Rochester City Ct.2006). Not only is the landlord responsible for the cost of storage, but the landlord is required to "safeguard or store items of value left in the leased premises at the time of the execution of the warrant of eviction." *Id.; see Young v. Warehouse No. 2 Inc.*, 143 Misc.2d 350, 352, 540 N.Y.S.2d 654 (N.Y.Civ.Ct.1989) (where evicted tenant's

property stored by landlord and city marshal at warehouse, landlord rather than tenant must pay for storage).

Defendant had a duty to safeguard Plaintiff's property and hired Advanced to carry out the moving and storage of Plaintiff's property. "[S]ince the landlord hired the moving company, it becomes the agent of the landlord, who is, thus responsible for such party's improper removal of plaintiff's property." *Marcado v. Weinheim,* 108 Misc.2d 81, 84, 436 N.Y.S.2d 973 (N.Y.Civ. Ct.1981).

Defendant contends that it did not have an agency relationship with Advanced because Advanced was an independent contractor. However, even if Advanced is considered to be an independent contractor, Defendant may be liable for the alleged negligent hiring and/or supervising of Advanced when it executed the removal and storage of Plaintiff's property.

"As a general rule, a principal is not liable for the acts of an independent contractor because, unlike the master-servant relationship, principals cannot control the manner in which independent contractors perform their work." *Saini v. Tonju Assoc.,* 299 A.D.2d 244, 245, 750 N.Y.S.2d 55 (1st Dep't 2002). However, "a party may be held liable for a contractor's negligence under theories of negligent hiring, negligent retention, and negligent supervision." *Bellere v. Gerics,* 304 A.D.2d 687, 688, 759 N.Y.S.2d 105 (2d Dep't 2003).

"To hold a party liable under theories of negligent hiring, negligent retention, and negligent supervision, a plaintiff must establish that the party knew or should have known of the contractor's propensity for the conduct which caused the injury." *Id.* at 688, 759 N.Y.S.2d 105. Here, Plaintiff has presented copies of six letters that allegedly placed Defendant on notice that Advanced was not licensed, had

not made the proper disclosures under the Truth-in-Storage Act, and was failing to produce Plaintiff's property. (Dkt. 241–1 at 13–18). The Court agrees with the Report and Recommendation that the fact that Advanced's license to transport household goods was suspended "raises an issue as to whether JPMC was negligent in its selection of Advanced to perform the removal and storage of plaintiff's property." (Dkt. 247 at 69).

There is also a question of fact for a jury as to whether Defendant was negligent in its supervision of Advanced in light of Defendant's failure to even respond to Plaintiff's concerns over Advanced's failure to turn over her property without imposing a fee. Plaintiff testified that when she requested her toolbox from Advanced and objected to paying $500 to release it, Advanced's representative Lisa telephoned JPMC's representative so Plaintiff could schedule a meeting. (Dkt. 234 at 86). When Plaintiff met with JPMC's representative and asked for the return of property held by Advanced, Plaintiff claims the representative said "it's done ... it's not my business anymore" and indicated that Plaintiff should "talk to the moving company directly." (*Id.* at 86–88). If Advanced's representative did respond to Plaintiff's requests by seeking the intervention of JPMC's representative, this raises a fact issue for the jury as to the supervisory nature of the relationship between JPMC and Advanced.

Defendant also objects to Plaintiff's Truth–in–Storage Act claims on the grounds that the eviction action was not unlawful and therefore could not "serve as the basis for a claim...." (Dkt. 250–2 at 5). However, with respect to Plaintiff's Truth–in–Storage Act claim, as noted by the Report and Recommendation, even if the eviction was proper, there is an issue of fact as to whether Advanced acted in a

lawful manner once it obtained possession of the property and whether Defendant is responsible for that conduct. (Dkt. 247 at 68–70).

### B. There is a Question of Fact as to Whether Plaintiff Received the Notification Required by the Truth–in–Storage Act

 The Truth–in–Storage Act also provides:

> When a warehouseman accepts household goods for storage on behalf of a consumer bailor after a warrant of eviction has been executed ... the warehouseman shall within three days after receipt of the goods mail a copy of a statement containing the disclosure required by subdivisions one, two and three of this section to the consumer bailor by registered or certified mail at his last known residence.

N.Y. Gen. Bus. Law § 607(4); *see Reichman v. Warehouse One, Inc.*, 173 A.D.2d 250, 251–52, 569 N.Y.S.2d 452 (1st Dep't 1991) (issuing bench trial verdict in favor of plaintiff when defendant warehouse failed to timely notify plaintiff that it was in possession of her property). Plaintiff testified that she was never contacted by Advanced, but instead had to seek out the inventory of items stored by Advanced and location of the storage unit. (Dkt. 234 at 39–40, 60–61). Defendant acknowledges that Plaintiff did not receive an inventory of her stored property until her third visit to the Advanced storage facility. (Dkt. 233–2 at 5). Plaintiff asserts that she requested a copy of the inventory from Defendant as well, but that her requests were ignored. (Dkt. 241 at 8, 23; Dkt. 241–1 at 13–18). Defendant does not respond to this argument. Instead, Defendant focuses its argument on its contention that it cannot be held liable for the actions of Advanced. (Dkt. 242 at 6–7).

As noted above, Defendant may be liable for the actions of Advanced, depending on the resolution of the factual disputes. Because there are outstanding issues of fact most appropriately considered by a jury with respect to Plaintiff's Truth–in–Storage Act claim, the Court adopts the Report and Recommendation denying Defendant's motion for summary judgment as to the claim.

## III. Conversion Claim

 "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006). " 'Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.' " *Pappas v. Tzolis*, 20 N.Y.3d 228, 234, 958 N.Y.S.2d 656, 982 N.E.2d 576 (2012) (quoting *Colavito*, 8 N.Y.3d at 50, 827 N.Y.S.2d 96, 860 N.E.2d 713).

In this case, Judge McCarthy found that Plaintiff's claims that Defendant did not allow her to take "her personal properties including woodstove, gas heater, chandelier, large dog kennel, garden windmill, etc." (Dkt. 1 at ¶ 9) were separate and distinct from any claims that items were removed by Advanced and placed in storage, and because Defendant failed to dispute this aspect of Plaintiff's version of events, Defendant's motion with respect to Plaintiff conversion claim should be denied. (Dkt. 247 at 67).

Upon *de novo* review and having reviewed the parties' submissions, the Court adopts the Report and Recommendation on Plaintiff's conversion claim.

Defendant argues that it is "[o]f extreme importance ... that JPMC is not itself alleged to have converted or otherwise unlawfully detained Plaintiff's personal property." (Dkt. 250–2 at 2). Defendant is incorrect in this assertion. Plaintiff plainly maintains that Defendant unlawfully converted her personal property by claiming her woodstove, gas stove, curtains, two chandeliers, large dog kennel, portable garden windmill, cooking stove, security video camera network, and other items as part of the property. (Dkt. 241 at 16; Dkt. 234 at 32–33, 87–88). In other words, these items were apparently never removed from the property and placed in storage with Advanced.

■■■ Defendant now for the first time argues that these items were permanent fixtures that properly became part of the realty. (Dkt. 250–2 at 15). "[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Sci. Components Corp. v. Sirenza Microdevices, Inc.,* No. 03 Civ. 1851, 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006). In any event, there is a question of fact as to whether the properties at issue—such as the curtains or portable garden windmill—constitute fixtures. *See Matter of Metromedia Inc. v. Tax Comm. of City of N.Y.,* 60 N.Y.2d 85, 90, 468 N.Y.S.2d 457, 455 N.E.2d 1252 (1983) ("To meet the common-law definition of a fixture, the personalty in question must: (1) be actually annexed to real property or something appurtenant thereto; (2) be applied to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) be intended by the parties as a permanent accession to the freehold."); *Nextel of N.Y., Inc. v. Assessor for Vill. of Spring Valley,* 4

Misc.3d 233, 243, 771 N.Y.S.2d 853 (N.Y.Sup.Ct.2004) (same).

■■■ Defendant notes that Plaintiff's complaint also alleges conversion of personal items not affixed to the property, such as cash, a Rolex watch, jewelry, a digital camera, and more, but without citing to any case law argues that these claims are abandoned because Plaintiff did not address these items in her opposition to the motion for summary judgment. (Dkt. 250–2 at 15). In fact, Plaintiff's complaint does list additional property that she claims was improperly converted by Defendant, through Advanced, because the items were missing from the inventory. (Dkt. 1 at ¶¶ 23–24). Contrary to Defendant's argument, Plaintiff does refer to the loss of her personal property and even references her cash and jewelry box in her memorandum in opposition to summary judgment. (Dkt. 241 at 22, 30–31). Additionally, Plaintiff plainly referred to the loss of these personal properties during her deposition testimony. (Dkt. 234 at 33, 35, 72–83). Accordingly, these items are included in the property alleged to have been converted by Defendant through Advanced and Plaintiff's claim of conversion with respect to these properties has not been abandoned.

■■■ Defendant also argues that it should be insulated from liability on Plaintiff's conversion claim with respect to her personal property because "its detention of Plaintiff's property via Advanced was authorized by a valid judgment and warrant of the Coming City Court, and ... JPMC cannot be held liable for the actions of Advanced as an independent contractor." (Dkt. 250–2 at 14).

■■■ Plaintiff's claim with respect to her personal property does not stem from the eviction and removal of the property itself, but rather the alleged mishandling

and improper retention of Plaintiff's property by Advanced. In some instances, there may be a basis for a conversion claim where a party fails to return property to the proper owner. *See Dupree v. UHAB–Sterling Street Housing Development Fund Corp.*, No. 10–CV1894(JG)(JO), 2012 WL 3288234, at *11 (E.D.N.Y. Aug. 10, 2012) (denying defendant's motion for summary judgment on plaintiff's conversion claim where there was a genuine issue of fact as to when plaintiff first demanded the return of his property, and where plaintiff challenged "not just the removal and storage of his property, but the subsequent loss of the property at auction without having been afforded the opportunity to recover it."); *Miller v. Marchuska*, 31 A.D.3d 949, 819 N.Y.S.2d 591, 593–94 (3d Dep't 2006) ("Plaintiff established that he is the owner of the subject personal property, defendants had such property in their possession and they refused to return the property to him upon his demand. Accordingly, plaintiff has established a prima facie case for conversion unless a lien or liens existed granting defendants superior possessory rights."); *Bos. Concessions Grp., Inc. v. Criterion Ctr. Corp.*, 250 A.D.2d 435, 673 N.Y.S.2d 111, 112–13 (1st Dep't 1998) ("[S]o much of the conversion claim as relates to the non-return of papers and warranties is viable, the deposition testimony establishing that plaintiff did demand the return of these items and that defendant or its agent refused to do so."). *Cf. Priester v. R.F.H. Realty Corp.*, 13 Misc.2d 446, 446, 180 N.Y.S.2d 617 (2d Dep't 1958) ("The eviction did not constitute a conversion of plaintiffs goods; neither did the subsequent storage of them in the basement. The loss or damage, if any caused by flood was accidental and did not constitute conversion.").

Although Advanced may have had a valid lien on Plaintiff's personal property after the property had not been claimed for some period of time, *see Peller v. Approved Moving*, 8 Misc.3d 133(A), 803 N.Y.S.2d 20, 20 (N.Y.Sup.Ct.2005), there is a question of fact as to whether Advanced had any valid lien on Plaintiff's property at the time it allegedly refused to turn over Plaintiffs property without payment of a fine. This failure to redeliver goods to the person entitled to their return may constitute conversion. *See I.C.C. Metals, Inc. v. Mun. Warehouse Co.*, 50 N.Y.2d 657, 662, 431 N.Y.S.2d 372, 409 N.E.2d 849 (N.Y. 1980) ("Hence, a warehouse which fails to redeliver goods to the person entitled to their return upon a proper demand, may be liable for either negligence or conversion, depending upon the circumstances.").

For the reasons set forth in the Report and Recommendation as well as the additional foregoing reasons, Defendant's motion for summary judgment is denied as to Plaintiff's conversion claim.

## IV. Intentional Tort Claim

Defendant argues "[t]o the extent Plaintiff seeks to hold JPMC liable for the allegedly wrongful act of the moving and storage company in requiring Plaintiff to retrieve all of her personal property at one time, JPMC cannot be liable because the moving and storage company was an independent contractor over whom JPMC exercised no control." (Dkt. 250–2 at 16). Defendant has merely repeated its failed arguments with respect to the conversion and Truth–in–Storage Act claims.

"In eviction cases, it would appear that the period [to store property] would usually be 30 days and that the tenant, at any time during the period could go to the warehouse and claim his possessions without having to pay any charges." *Young*, 143 Misc.2d at 352, 540 N.Y.S.2d 654.

Here, according to Plaintiff's sworn testimony, she was not permitted to claim her possessions within the first 30 days of storage without paying a fee. (Dkt. 234 at 44–45). Defendant contends that Plaintiff was provided an opportunity to claim her property so long as she did not claim it in a piecemeal fashion, and therefore there was no intentional unlawful retention of Plaintiffs property. (Dkt. 236 at 14–15; Dkt. 250–2 at 12, 16). There is a question of fact as to whether Plaintiff was permitted to reclaim her personal property without having to pay any charges within the first 30 days of storage. Therefore, the Court adopts the Report and Recommendation to deny Defendant's motion for summary judgment with respect to the intentional tort claim.

## CONCLUSION

For the reasons discussed above, the Court adopts the Report and Recommendation (Dkt. 247) in full. Defendant's motion for summary judgment (Dkt. 235) is denied in its entirety.

SO ORDERED.

## REPORT AND RECOMMENDATION

JEREMIAH J. McCARTHY, United States Magistrate Judge.

Before me is the motion of defendant JPMC Specialty Mortgage, LLC ("JPMC") for summary judgment [235].[1] For the following reasons, I recommend that JPMC's motion be denied.

1. Bracketed references are to the CM/ECF docket entries.

2. JPMC's Reply Memorandum of Law [49], p. 5 n. 2.

## BACKGROUND

Plaintiff rented a house located at 187 West 5th Street in Coming, New York from its owner Mihee Cho for approximately five years. JPMC's Statement of Material Facts [238–1], Statement No. 1; plaintiff's deposition transcript [234], pp. 10–11. She resided at the premises with her husband and 16 year old daughter. Plaintiff's deposition transcript [234], pp. 25–26. In April 2006, JPMC (f/k/a WM Specialty Mortgage LLC)[2] commenced an action to foreclose a mortgage secured by the premises, and JPMC was the successful bidder at the foreclosure sale, which occurred on November 14, 2006, prompting it to commence eviction proceedings against Mihee Cho and the John Doe occupants. JPMC's Statement of Material Facts [238–1], Statement Nos. 2–5.[3]

Although plaintiff disputes that she was properly served with either the 10–day Notice to Quit the Premises or the Petition For a Final Judgment of Possession and Warrant of Eviction (plaintiff's Response to Defendant's Statement of Material Facts [241], pp. 10–11 of 33, ¶¶ 3, 4), a Warrant of Eviction was signed on February 22, 2007, directing the Steuben County Sheriff "to remove Mihee Cho and all other occupants from said premises, and put the Petitioner in full possession thereof." JPMC's Statement of Material Facts [238–1], Statement No. 8.

Plaintiff concedes that she received advance notice of the eviction, which occurred on March 23, 2007. Id., Statement Nos. 9, 10; plaintiff's Response to Defendant's Statement of Material Facts [241], p. 7 of 33, ¶ 5.[4] According to plaintiff, this

3. JPMC's attorneys in this case also represented it in the eviction. Knuckles Affidavit [238], p. 1 of 4.

4. Although plaintiff admits that she was given 72 hours advance notice of the eviction (JPMC's Statement of Material Facts [238–1],

did not provide her with sufficient time to remove her belongings, so she called JPMC's attorney and requested additional time, but this request was refused. She also called the Sheriff's Office and was erroneously advised that, as a no-fault tenant, her property would be delivered to her new home in Buffalo, New York. JPMC's Statement of Material Facts [238–1], Statement No. 12; plaintiff's Response to Defendant's Statement of Material Facts [241], p. 7 of 33, ¶ 7; plaintiff's deposition transcript [234], pp. 22–23, 27–29.

Plaintiff testified that on the day of the eviction, the Sheriff arrived with one or two unidentified female representatives of JPMC, and that JPMC's representatives advised her that she could not retain her chandelier, refrigerator, gas stove, and other items located in the barn, claiming that some were fixtures. Plaintiff's deposition transcript [234], pp. 31–32; plaintiff's Memorandum of Points and Authorities [241], p. 16 ("Defendant's representative stole her woodstove, gas stove, 2 chandeliers, large dog kennel, portable garden windmill and garden decos, cooking stove, security video camera network, and etc"). Plaintiff also testified that the Sheriff gave her three minutes to vacate her home. Plaintiff's deposition transcript [234], p. 35.

AMC Mortgage Services, acting as the mortgage servicer for JPMC, retained a real estate agent for the sale of the premises, who in turn selected Advanced Moving & Storage ("Advanced") to act as the moving and storage company for the eviction. JPMC's Statement of Material Facts [238–1], Statement Nos. 19–21.[5] According to plaintiff, she was not provided with an inventory of the removed property at the time of the eviction, and was not informed of the moving company's name or address. Plaintiff's deposition transcript [234], p. 39.

When plaintiff called Advanced, she was advised that she had 30 days to pick up her property. Id., pp. 41–42, 47. Approximately five days after the eviction she drove two hours from Buffalo to Advanced's headquarters in Elmira, New York with a large van to retrieve her property. Id., pp. 43, 46. When she arrived at Advanced's headquarters, she was told by an individual named Lisa that she could not pick up her property because the move was not complete. Id., pp. 43–45.

When plaintiff observed some of her property in the warehouse and requested her toolbox, she was told that it would cost $500 to release it. Id., pp. 44–45. Lisa, Advanced's representative, telephoned JPMC's representative so that plaintiff could schedule a meeting. Id., p. 85. When plaintiff met JPMC's representative, she asked for the return of her refrigerator, gas stove, chandelier and other items, but the representative refused. In response to plaintiff's request for the return

Statement No. 9; plaintiff's Response to Defendant's Statement of Material Facts [241], p. 7 of 33, ¶ 5), she also states that "[s]he was given *less than* 72 hours." Plaintiff's Response to Defendant's Statement of Material Facts [241], p. 7 of 33, ¶ 7.

5. Plaintiff's Complaint named Triple C Transportation Co., Inc. d/b/a Advanced Moving & Storage, LLC as a defendant. Before issue was joined, Judge Siragusa issued an Order to Show Cause concerning whether the court had subject matter jurisdiction over the action, given the common New York citizenship between plaintiff and Triple C Transportation Co., Inc. [5], pp. 7–8. In response, plaintiff argued that she was not a citizen of New York, but requested in the alternative, that Triple C be dismissed. Acting on plaintiff's alternative request, Triple C was dismissed, without prejudice. Judge Arcara's December 15, 2008 Decision and Order [7], pp. 5–7. A third-party action was later commenced by JPMC against Advanced [178], and a Clerk's Entry of Default was obtained [186].

of the property being held by Advanced, JPMC's representative said, "it's done. I think she said it's done, it's not my business any more. She said . . . you can talk to the moving company directly . . . and she gave me only—funny thing was, rice and Coke from the inside". *Id.,* pp. 86–88.

Plaintiff returned to Advanced in the beginning of April and was advised by Advanced that she would have to take all of her property at one time, but was prohibited from taking her property piecemeal, so she left without any of her property. *Id.,* pp. 52–57, 59. A couple of days later she returned and was given an inventory of her property, which was the only document she was provided in connection with the removal and storage of her property. *Id.,* pp. 59–60, 64; deposition exhibit A, which is annexed to the deposition transcript. She was again told that she would have to remove all of her property at once, or could not "have any property at all". *Id.,* p. 61. When asked why she did not hire a moving company to remove all of her property from Advanced's warehouse, she testified that she could not "afford the money". *Id.,* p. 83.

Plaintiff did not physically return to Advanced again. *Id.,* p. 63. Instead, she contacted the New York State Attorney General and learned that Advanced's license was suspended. *Id.,* pp. 63–64. In opposition to JPMC's motion, plaintiff relies on a series of documents from the New York State Department of Transportation indicating that as of October 2006, the operating authority of Triple C Transportation Co., Inc. d//b/a Advance Moving &

Storage Company[6] to engage in transportation of household goods was cancelled. Plaintiffs appendix of evidence [241–1], p. 4 of 25, Evidence 2.[7] She also includes an October 2009 email from clabello@dot.state.ny.us, stating that "[t]he authority of Triple C Transportation Co., Inc . . . . is still in suspension". *Id.*

By letter dated April 19, 2007, plaintiff advised JPMC that Advanced was "willfully refus[ing] to release her property", and asked that it produce its service agreement with JPMC, a copy of its policy and terms, and a copy of the storage fee. Plaintiff's appendix of evidence [241–1], p. 4 of 25, Evidence 4. In a follow-up letter dated May 23, 2007, she advised JPMC that Advanced's license was suspended, and continued with letters dated June 18, August 24, September 8 and October 28, 2007, advising JPMC that her property had not been returned. *Id.* She never received a response to these letters. Plaintiff's deposition transcript [234], p. 65. She also repeatedly called Advanced and left messages, but her calls were not returned, which prompted plaintiff to believe that Advanced had ceased its operations. *Id.,* pp. 66, 69–70. It was not until she initiated this lawsuit that Advanced contacted her to advise her that it was selling her property because she had not paid the storage fee of approximately $4,000. *Id.,* pp. 67–68.

Plaintiff's remaining claims are for (1) conversion, (2) a violation of New York's "Truth–in–Storage" Act, N.Y. Gen. Bus. Law §§ 605–610, and (3) intentional torts.[8]

---

**6.** Although this appears to be a different entity from the third-party defendant, which is identified as Advanced Moving & Storage, LLC, JPMC does not raise this issue.

**7.** JPMC does not contest the admissibility of any of plaintiff's submissions offered in opposition to its motion.

**8.** Plaintiff's other claims were dismissed by Judge Arcara at the outset of the case in response to JPMC's motion for dismissal. *Jin–Jo v. JPMC Specialty Mortgage LLC,* 2009 WL 2424344, *7 (W.D.N.Y.2009) (Arcara, J.).

## ANALYSIS

### A. Summary Judgment Standard

The standard to be applied on a motion for summary judgment in this Circuit is well settled. "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir.2003).

### B. Conversion Claim

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession". *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006). JPMC argues that plaintiffs conversion claim must be dismissed "because the evidence demonstrates that there is no genuine issue of material fact that the eviction was conducted in accordance with the mandates of the law, and as such *the removal and storage* of Plaintiff's personal property was not 'unlawful' or 'unauthorized' but rather was authorized by law; implemented by the Coming City Court, and executed by the Steuben County Sheriff." JPMC's Memorandum of Law [236], p. 12 (emphasis added).

JPMC's argument misconstrues the basis of plaintiff's conversion claim, which alleges that JPMC did not allow her to take "her personal properties including woodstove, gas heater, chandelier, large dog kennel, garden windmill, etc." Complaint [1], ¶ 9. These items were separate and distinct from those removed by Advanced and placed in storage. *See* Plaintiff's deposition transcript [234], pp. 31–32; plaintiff's Memorandum of Points and Authorities [241], p. 21 of 33 ("Defendant's representative stole her woodstove, gas stove, 2 chandeliers, large dog kennel, portable garden windmill and garden decos, cooking stove, security video camera network, and etc"). JPMC offers no evidence disputing this aspect of plaintiff's version of events. Therefore, I recommend that JPMC's motion to dismiss plaintiff's conversion claim be denied.

### C. Truth–in–Storage Act Claim

Under New York's Truth–in–Storage Act, "[a]ny consumer bailor damaged by an unlawful detention of his goods or any other violation of this article may bring an action for recovery of damages and the return of his goods." N.Y. Gen. Bus. Law § 609(1). In denying JPMC's motion to dismiss plaintiff's Truth–in–Storage Act claim, Judge Arcara held that "[a]lthough defendant argues in its motion that plaintiff should have maintained this case against a moving company no longer named, the plain language of Section 609(1) does not prevent plaintiff from establishing during discovery, if she can, that defendant somehow helped bring about an unlawful detention of her property." *Jin–Jo*, 2009 WL 2424344 at *4. With discovery now complete, JPMC argues that "the facts demonstrate that JPMC did nothing unlawful in obtaining the warrant of eviction or retaining the moving & storage company, and cannot be held liable for any

allegedly wrongful acts of the moving & storage company or the Steuben County Sheriff." JPMC's Memorandum of Law [236], p. 8. I disagree.

According to JPMC, "[t]he only true fact ... Plaintiff has disputed is service of the 10–day Notice to Quit, Petition and Notice of Petition. However, Plaintiff's allegation that she did not receive the eviction documents does not create a 'genuine' issue of fact for trial." JPMC's Reply Memorandum of Law [242], p. 2. I agree with JPMC that the "process server's affidavit of service with respect to service of a ' 10 Day Notice to Quit with Referee's Deed' constitute[s] *prima facie* evidence of proper service". *United States Bank National Association v. Patterson*, 102 A.D.3d 858, 859, 959 N.Y.S.2d 216 (2d Dep't.2013). However, plaintiff has rebutted this presumption with more than what JPMC characterizes as a "conclusory denial of receipt". JPMC's Reply Memorandum of Law [242], p. 3. She has submitted printouts purportedly from the United States Postal Service website of tracking results for the certified mail receipts attached to the process server's affidavit of service for the 10–day Notice to Quit Premises [234–5], which appear to show the delivery of these documents occurring in Horseheads, New York, rather than Coming, New York. [241–1], pp. 21–23 of 25.[9]

Alternatively, relying upon *Kleeman v. Rheingold*, 185 A.D.2d 118, 119, 585 N.Y.S.2d 733 (1st Dep't.1992), JPMC argues that "[a] process server is an independent contractor and a party cannot be held vicariously liable for any wrongful act by a process server where the affidavit of service is in proper form." JPMC's Reply Memorandum of Law [242], p. 4. However, JPMC ignores that *Kleeman* was overruled in relevant part. *See Kleeman v. Rheingold*, 81 N.Y.2d 270, 273, 598 N.Y.S.2d 149, 614 N.E.2d 712 (1993) (rejecting the argument that an attorney could evade legal responsibility for the negligent conduct of a process server).

Even assuming that the eviction was proper, I disagree with JPMC that the facts demonstrate that it did nothing wrong in its retention of Advanced. "For over 80 years, it has been clear in New York that a marshal has the right to remove a tenant's property of value still left in an apartment more than 72 hours after the tenant has been served with a warrant of eviction. If such property is removed by the marshal at the landlord's request or by the landlord, the landlord is responsible for the cost of storing the property for a reasonable period until it is claimed by the tenant. If the landlord stores the items in a third party's storage facility, then after 30 days, section 7–206 of the Uniform Commercial Code provides the best guidance regarding how the parties should proceed." *Wilson v. CRL Management, Inc.*, 14 Misc.3d 231, 232–233, 829 N.Y.S.2d 424 (Rochester City Ct.2006).[10]

---

9. JPMC does not dispute the admissibility of these submissions. In any event, I conclude that they are admissible as public records pursuant to Fed.R.Evid. 803(8). *See Masuku v. Bank of America, N.A.*, 2012 WL 3528006, *2, n. 26 (S.D.Tex.2012); *Chapman v. San Francisco Newspaper Agency*, 2002 WL 31119944, *2 (N.D.Cal.2002).

10. U.C.C. § 7–206 provides, in relevant part, that: "(a) A warehouse, by giving notice to the person on whose account the goods are held and any other person known to claim an interest in the goods, may require payment of any charges and removal of the goods from the warehouse at the termination of the period of storage fixed by the document of title or, if a period is not fixed, within a stated period not less than 30 days after the warehouse gives notice. If the goods are not removed before the date specified in the notice, the warehouse may sell them pursuant to Section 7–210.

...

JPMC argues that it was only responsible for paying for the cost of storing plaintiff's property, and attempts to insulate itself from the conduct of Advanced by characterizing Advanced as an independent contractor. JPMC's Memorandum of Law [236], p. 9. However, "since the landlord hired the moving company, it becomes the agent of the landlord". *Marcado v. Weinheim,* 108 Misc.2d 81, 84, 436 N.Y.S.2d 973 (N.Y.Civil Ct. Bronx Cty. 1981).

Even if Advanced could be characterized as an independent contractor, there are "numerous exceptions" to the "general rule, [that] a principal is not liable for the acts of an independent contractor", including "where the employer is negligent in its selection of selecting, instructing or supervising the independent contractor". *Saini v. Tonju Associates,* 299 A.D.2d 244, 245, 750 N.Y.S.2d 55 (1st Dep't.2002). The fact that Advanced's license was suspended raises an issue as to whether JPMC was negligent in its selection of Advanced to perform the removal and storage of plaintiff's property. Although plaintiff sent JPMC numerous letters advising it that Advanced was refusing to release her property and that its license was suspended ( [241–1], pp. 13–18 of 25), JPMC did not intercede, thereby also raising questions as to whether it was negligent in its supervision of Advanced.

Relying upon *Funding Assistance Corp. v. Mashreq Bank, PSC,* 277 A.D.2d 127, 128, 717 N.Y.S.2d 46 (1st Dep't.2000), JPMC further argues that it was not a constructive bailee of plaintiff's property, and, as such, owed no duty to plaintiff. JPMC's Memorandum of Law [236], p. 7. In *Funding Assistance Corp.,* the landlord and tenant and had agreed to a stipulation of settlement, where the plaintiff tenant agreed to the entry of a judgment of possession in exchange for a stay of that judgment's execution, but when the "plaintiff vacated [prior to the expiration of the stay], it chose ... not to take its personal property", which the plaintiff then sought seven years later. *Id.* at 127, 717 N.Y.S.2d 46. Under those circumstances, the court concluded that "defendant was not and could not have been deemed a constructive bailee of plaintiff's property ... because prior to vacating the premises, pursuant to the Judgment of Possession and Stipulation of Settlement, plaintiff did not, at any time before the date of the execution, make any arrangements whatsoever with its landlord to keep the property in safekeeping for its benefit." *Id.* at 128, 717 N.Y.S.2d 46. By contrast, here there is no indication that plaintiff chose to not to take her personal property from the premises, or that she abandoned it.

JPMC also attempts to cast responsibility upon plaintiff for her failure to remove the property when she received notice of the eviction. JPMC's Memorandum of Law [236], p. 9. However, the fact that plaintiff did not remove her property before the eviction did not absolve JPMC of its duties to plaintiff with respect to her personal property. While JPMC also argues that plaintiff failed to avail herself of the opportunity Advanced provided her to collect her property free of charge (*id.,* p. 10), Advanced's offer was hardly unfettered. According to plaintiff, Advanced imposed a prohibitive restriction requiring her to take the house full of items all at once *or none at all.* On one occasion it also requested that she pay $500 to obtain just her tool box.

Therefore, I recommend JPMC's motion to dismiss plaintiff's Truth–in–Storage Act claim be denied.

---

(d) A warehouse shall deliver the goods to any person entitled to them under this article upon due demand made at any time before sale or other disposition under this section."

## D. Intentional Tort Claim

JPMC describes this claim as relying "on essentially the same facts as the Truth–in–Storage Act and conversion claims", and repeats its arguments directed at these claims. JPMC's Memorandum of Law [236], pp. 12–13. For these reasons discussed above, I likewise recommend that this portion of JPMC's motion be denied.

## CONCLUSION

For these reasons, I recommend that JPMC's motion for summary judgment [235] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by August 30, 2013 (applying the time frames set forth in Fed.R.Civ.P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely ... waives any right to further judicial review of [this] decision". *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988); *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection ... supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Filed Aug. 13, 2013.